1  SARA M. THORPE (SBN 146529)
   sthorpe@gordonrees.com
2  D. CHRISTOPHER KERBY (SBN 124546)
   ckerby@gordonrees.com
3  GORDON & REES LLP
   Embarcadero Center West
4  275 Battery Street, Suite 2000
   San Francisco, CA 94111
5  Telephone: (415) 986-5900
   Facsimile: (415) 986-8054
6
   Attorneys for Defendant
7  ST. PAUL MERCURY INSURANCE COMPANY

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT COURT OF CALIFORNIA

10                              SAN JOSE DIVISION

11 NETSCAPE COMMUNICATIONS              ) CASE NO. 5:06-CV-00198 JW (PVT)
   CORPORATION, a Delaware corporation; and )
12 AMERICAN ONLINE, INC., a Delaware     ) **DEFENDANT ST. PAUL'S REPLY IN**
   corporation,                          ) **SUPPORT OF MOTION FOR LEAVE TO**
13                                       ) **AMEND ADMISSION**
                         Plaintiffs,     ) **[FRCP 36(B)]**
14     vs.                               )
                                         ) Complaint Filed: 12/12/05
15 FEDERAL INSURANCE COMPANY, an         ) Amended Complaint: 2/24/06
   Indiana corporation; et al.,          )
16                                       ) **Accompanying Documents:** Additional
                         Defendants.¶    ) Declaration of Sara M. Thorpe
17                                       )
                                         ) Dept.: 5
18                                       ) Magistrate Judge Patricia V. Trumbull

19         This brief is filed pursuant to this Court's Interim Order permitting St. Paul Mercury

20 Insurance Company ("St. Paul") to file a Reply in support of its motion for leave to amend

21 Request for Admission ("RFA") #4.

22 **I.    INTRODUCTION**

23         St. Paul's motion to amend its discovery response pursuant to Fed. Rule Civ. Proc. 36(b)

24 ("Rule 36(b)") is to assure St. Paul is able to raise a defense to what should be a far-fetched

25 argument for coverage made by plaintiffs AOL/Netscape ("plaintiffs"), but an argument

26 nonetheless. St. Paul's request is to make sure the cross-motions presently pending before this

27 Court are decided on the merits, and not based on a procedural shortcoming. Plaintiffs oppose

28 St. Paul's motion on three grounds: (1) St. Paul should have known plaintiffs had a theory that

there were allegations of disclosure of private information to an advertising entity, AdForce; (2) St. Paul delayed in seeking leave to amend its response; and (3) allowing the amended RFA would prejudice plaintiffs. Lastly, plaintiffs argue St. Paul's amended response should be stricken, but this motion is not the proper vehicle for that request.

## II.  RESPONSES TO PLAINTIFFS' ARGUMENTS

### A.  Rule 36(b) Seeks To Have Claims Decided On Their Merits

Even the cases upon which plaintiffs rely hold that a Rule 36(b) motion "seeks to serve two important goals: truth seeking in litigation and efficiency in dispensing justice." *Conlon v. United States*, 474 F.3d 616, 622 (9th Cir. 2007). Accord, *Gallegos v. City of Los Angeles*, 308 F.3d 987, 993 (9th Cir. 2002). St. Paul seeks to have this matter decided on the merits and, given the circumstances, leave should be granted to permit that to happen.

### B.  Plaintiffs' AdForce Argument Is A Theory Developed During The Coverage Lawsuit And Not Based On Information Provided To Or Mentioned In Communicating With St. Paul During The Pendency Of The Claims

Plaintiffs suggest St. Paul should have known at the time St. Paul first responded to RFA #4 that the "3rd party advertising" part of the Online Activities Exclusion in the St. Paul policy was implicated. Plaintiffs argue St. Paul should have known there were allegations in the underlying class actions of disclosure of private information to AdForce. As support, plaintiffs rely on a few dozen pages among the 11,842 pages produced to St. Paul in this coverage lawsuit, admittedly documents not previously provided to St. Paul during the pendency of the claims.[1]

The basis for plaintiffs' theory of coverage pertaining to AdForce is specifically four pages of a 400 page deposition of David Park and pages from a 97 page settlement presentation, all produced for the first time to St. Paul during the coverage litigation.[2] Plaintiffs do not dispute that these documents were not provided, and were not even mentioned, to St. Paul during the course of the class actions, even though there were ample opportunities to do so. As previously indicated (and not disputed by plaintiffs) Patrick Carome and the Wilmer Cutler firm communicated with St. Paul from the date of tender of these class actions in 2000 until the

---

[1] Additional Declaration of Sara Thorpe ("Adtl. Thorpe Decl."), ¶ 2.
[2] Supplemental Declaration of Leslie Pereira, filed April 17, 2007.

settlement of the class actions in 2005. As a result, "3rd party advertising" was not asserted as the basis for St. Paul's denial of coverage when the class actions were tendered because there was no information at that time that the "3rd party advertising" part of the policy's Online Activities Exclusion was implicated. It was not until the cross-motions for partial summary judgment that plaintiffs made this argument.

Plaintiffs' opposition to allowing amendment of RFA #4 needs to be considered in the context of this stage of the lawsuit and pending motions. St. Paul agrees with plaintiffs that this first phase of the case, the discovery, and the pending motions are focused on whether St. Paul had a duty to defend the class actions. Under Virginia law, which St. Paul maintains applies to this dispute (because AOL is a Virginia corporation that required claims to be handled through its Virginia office and previously sought a coverage determination under this same St. Paul policy under Virginia law), the duty to defend is determined by the claims made in the complaint. *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 831, 636 (4th Cir. 2005) (applying Va. law); *America Online, Inc. v. St. Paul Mercury Ins. Co.*, 347 F.3d 89, 93 (4th Cir. 2003) (applying Va. law). Thus, any evidence outside of the complaint – which plainly do not mention any injury caused by disclosure or advertising – is irrelevant.[3]

Under California law, which plaintiffs argue applies, the duty to defend is determined by the complaints, policy, and information obtained during investigation of the claim. *Waller v. Truck Ins. Exchg.*, 44 Cal.Rptr.2d 370, 378 (Cal. 1995). An insurer is not required to speculate about unpled claims. *Hurley Construction Co. v. Fire Ins. Exchg.*, 12 Cal.Rptr.2d 629, 631 (Cal.App. 1992). The duty to defend is *not* judged by information the insured provides *after* the claim is resolved and suit is filed against the insurer. *Safeco Ins. Co. v. Parks*, 19 Cal.Rptr.3d 17, 24-25, 27 (Cal.App. 2004).

St. Paul denied coverage for the claims based on the class action complaints, which do not allege any disclosure of private information to any third party, and certainly make no mention of any advertising company.[4] Although there were ongoing communications between

---

[3] Adtl. Thorpe Decl., ¶ 6, Ex..129.
[4] Adtl. Thorpe Decl., ¶ 6, Ex. 129.

-3-                                    CASE NO. 5:06-CV-00198 JW (PVT)
DEFENDANT ST. PAUL'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO AMEND ADMISSION

the Wilmer Cutler firm (representing AOL/Netscape in the class actions) and St. Paul through the course of that litigation, there is no dispute that St. Paul was not provided with the documents on which plaintiffs now base this theory of coverage. In fact, as St. Paul has argued in the pending summary judgment motions, pleadings filed in those class actions show that in January 2003, AOL/Netscape's counsel, Carome, argued the class action plaintiffs were *not* alleging any disclosure of private information.[5] And, Joshua Rubin, counsel for the class action plaintiffs, in opposing that motion *agreed,* stating there was no need to plead whether or how AOL used stolen private information in order to prevail in the class actions.[6]

During discovery in this coverage case, St. Paul sought to understand plaintiffs' theories for coverage under the St. Paul policy. Plaintiffs' responses (only partially provided to this Court for this motion) show plaintiffs' theories were evolving *during the coverage lawsuit.* The chronology was that:

In May 2006, plaintiffs produced to St. Paul's counsel documents bates labeled NET/SDL 1 through 1944.[7]

On June 12, 2006, in response to St. Paul's RFA #12 ("Admit the UNDERLYING COMPLAINTS do not allege any user information allegedly collected by AOL/Netscape through its SmartDownload program was made known to any person."), plaintiffs responded: "Deny."[8] This response did not change when plaintiffs supplemented the response on June 23, 2006.[9]

On June 12, 2006, in response to St. Paul's interrogatories, plaintiffs answered Interrogatory #9 ("identify and describe *in detail* the information upon which AOL relies for its response" [emphasis added]) with numerous general objections and the following: "The Underlying Actions allege that information allegedly collected by Netscape and/or AOL was made known to Netscape and/or AOL. Moreover, the plaintiffs in the Underlying Actions

---

[5] Adtl. Thorpe Decl., ¶ 7, Ex. 217 (at NET/SDL 0004012).
[6] Adtl. Thorpe Decl., ¶ 8, Ex. 226 (at NET/SDL 0004140).
[7] Adtl. Thorpe Decl., ¶ 2.
[8] Adtl. Thorpe Decl., ¶ 3, Ex. 8.
[9] Declaration of Leslie Pereira, filed April 12, 2007 ("Pereira Decl."), Ex. 1.

asserted that information allegedly collected by Netscape and/or AOL either was – or was to have been – shared with third parties." In response to Interrogatory #10 (persons with knowledge), plaintiffs objected that the request was not relevant and that interpretation of the complaints in the underlying actions called for a legal conclusion. In response to Interrogatory #11 (requesting documents), plaintiffs indicated: "Complaints in Underlying Actions."[10]

On June 22, 2006, plaintiffs produced to St. Paul's counsel documents bates labeled NET/SDL 1945 through 7842 and 8603-11342.[11]

On June 23, 2006, plaintiffs provided Supplemental Responses in connection with RFA #12. As a Supplemental Response to #9 (information), they provided the same answer as in the original response. As a Supplemental Response to #10 (persons with knowledge), they provided the same answer as in their original response. As a Supplemental Response to #11 (documents), they indicated: "Complaints in Underlying Actions, St. Paul Policy."[12]

On July 28, 2006, plaintiffs produced to St. Paul's counsel documents bates labeled NET/SDL 7843 through 8602, and 11343 through 11824.[13]

On July 28, 2008, plaintiffs provided supplemental responses, including to RFA #12. In their Second Supplemental Response to #9 (information), they provided the same answer as in their original response. In their Second Supplemental Response to #10 (persons with knowledge), plaintiffs stated the same objections but added that they "identify Joshua Rubin as a person with knowledge about what the plaintiffs in the Underlying Actions were asserting." And, as a Second Supplemental Response to #11 (documents), in addition to Complaints in Underlying Actions and instead of St. Paul Policy, plaintiffs indicated: "pleadings in the Underlying Action, including, but not limited to, Plaintiffs' counsel's fee application; the settlement presentation made by the Plaintiffs in the Underlying Actions; transcripts of depositions taken in the Underlying Action."[14]

---

[10] Adtl. Thorpe Decl., ¶ 4, Ex. 9.
[11] Adtl. Thorpe Decl., ¶ 2.
[12] Adtl. Thorpe Decl., ¶ 5, Ex. 10.
[13] Adtl. Thorpe Decl., ¶ 2.
[14] Pereira Decl., Ex. 2.

Among the 11,842 pages of documents produced were the motions referenced earlier, including Rubin's admission that the class action plaintiffs were not making any claim of injury from disclosure of private information to third parties. There were pleadings, correspondence, deposition transcripts, documents referencing settlement discussions, and other documents.[15] Not noted by plaintiffs was that the 400 page deposition of Park included his testimony that there was *no disclosure of private information to any third parties*.[16] The settlement presentation PowerPoint upon which plaintiffs rely has in its 96 pages the suggestion that AdForce was capable of using user information to create ads, but no indication that this was in fact happening or that there was any injury caused to the class action plaintiffs from this activity.[17] Plaintiffs do not claim there was ever any amendment to the complaints in the class actions to assert any such claim.

Plainly, plaintiffs theories on insurance coverage have evolved during the course of this coverage lawsuit, and differ from the information provided to St. Paul during the pendency of the claims. Thus, it is not at all unreasonable for St. Paul to find itself in a position of having to modify its earlier discovery in response to plaintiffs' new theories, articulated for the first time during the cross motions for partial summary judgment.

### C.   Plaintiffs' Claims of Prejudice Are Unconvincing

Prejudice under Rule 36(b) means "the difficulty a party may face in proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence . . ." *Conlon, supra*, 474 F.3d at 622.

Plaintiffs claim they will be prejudiced if St. Paul is permitted to amend its RFA because they already took depositions at which, if they had known St. Paul's position, they would have asked more about the claims' attorneys' application of the "3rd party advertising" portion of the Online Activities Exclusion. Plaintiffs argue that at the time they deposed Dan Weiss they were unaware St. Paul would contend "3rd party advertising" barred coverage and that "Weiss had

---

[15] Adtl. Thorpe Decl., ¶ 2.
[16] Adtl. Thorpe Decl., ¶ 9, Ex. 229 (at NET/SDL 0006526-6527, 6429, 6430).
[17] See, Supp. Pereira Decl., Ex. 1.

information in that regard."[18] Plaintiffs claim they would have "questioned these claims handlers extensively about how this prong of the Online Activities Exclusion purportedly operated and how it applied to the facts of this case."[19] But there is no evidence Weiss or the other claims attorneys had any information or testimony to give on this subject. The claims attorneys were not provided with any information about any alleged claim of disclosure of information to AdForce. The two pieces of information upon which plaintiffs base this theory - excerpts from Parks' deposition and parts of a settlement presentation – were not provided to St. Paul until this coverage lawsuit.[20]

Plaintiffs argue they have been prejudiced because they were unaware of St. Paul's position until they filed their cross-motion and they would have addressed this further in their brief. However, plaintiffs made this argument for the first time in their cross-motion and were able to address in their reply St. Paul's response, including St. Paul's amended RFA #4.

Further, plaintiffs argue they would have conducted other factual investigation and/or discovery including into the business operations and practices of AdForce and consulted or retained an expert. However, there has never been any information provided to St. Paul (during the claim process or in the coverage lawsuit) that justifies or permits discovery and experts on issues that are far afield of the duty to defend issue. Whether there is a duty to defend is a legal decision for the Court to decide; expert testimony is not appropriate. *McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 463 (9th Cir. 1999) (experts' testimony cannot be used to provide legal meaning or interpret insurance policies).

Plaintiffs' claims of prejudice are unconvincing. St. Paul's amended response to RFA #4 is appropriate so that plaintiffs' theory can be decided on its merits, not on procedural grounds.

### D. The Timing Of St. Paul's Motion For Leave Has Been Explained

Plaintiffs criticize St. Paul for not bringing this motion for leave to amend its discovery response sooner. Plaintiffs concede they have been aware of St. Paul's position since February

---

[18] Plaintiffs' Opposition ("Opp."), p. 6.
[19] Opp., p. 8.
[20] See, Supp. Pereira Decl.

9, 2007, even though this motion was not filed until March. St. Paul's counsel has explained the inadvertence in filing the motion sooner. The important point is that plaintiffs were advised of the amended response with ample time, of which they took advantage, to address the issue in their motion papers.

### III.  CONCLUSION

Plaintiffs seek to raise in the cross motions for partial summary judgment a theory for coverage created after the class actions were concluded and the coverage lawsuit filed. St. Paul seeks to have any such theory decided on its merits and for that purpose, seek leave to amend RFA #4 (consistent with the amended response plaintiffs were provided on February 9, 2007).

Dated: April 18, 2007

                GORDON & REES LLP

                By___*Sara M. Thorpe*_____
                    SARA M. THORPE
                    D. CHRISTOPHER KERBY
                Attorneys for Defendant
                ST. PAUL MERCURY INSURANCE COMPANY

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

TRAV/1036622/1197129v.1

-8-    CASE NO. 5:06-CV-00198 JW (PVT)
DEFENDANT ST. PAUL'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO AMEND ADMISSION