United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Netscape Communications Corporation, et al., | NO. C 06-00198 JW |
| Plaintiffs, v. | **ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING ST. PAUL'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: DUTY TO DEFEND; SETTING FURTHER CASE MANAGEMENT CONFERENCE** |
| Federal Insurance Company, et al., | |
| Defendants. | |

## I. INTRODUCTION

America Online, Incorporated ("AOL") and its subsidiary Netscape Communications Corporation ("Netscape") (collectively, "Plaintiffs"), bring this diversity action against St. Paul Mercury Insurance Company ("St. Paul"), Federal Insurance Company, Executive Risk Specialty Insurance Company, and National Union Fire Insurance Company, alleging breach of contract, breach of the covenant of good faith and fair dealing, and violations of California Business and Professions Code Section 17200. Presently before the Court are Plaintiffs' and St. Paul's cross-motions for partial summary judgment on the duty to defend. The Court conducted a hearing on June 7, 2007. Based on the papers submitted to date and the arguments of counsel at the hearing, the Court DENIES Plaintiffs' motion and GRANTS St. Paul's motion.

## II. BACKGROUND

Plaintiffs contend that their policy with St. Paul obligated St. Paul to defend them against personal injury suits such as those brought in four civil actions filed against Plaintiffs (the

1 "Underlying Actions") for alleged interceptions of private electronic communications.  (Plaintiffs'
2 Notice of Motion and Cross Motion for Partial Summary Judgment Re: Duty to Defend and
3 Opposition to St. Paul Mercury's Motion for Partial Summary Judgment at 2, hereafter, "Plaintiffs'
4 Motion," Docket Item No. 85.)

**A.     The Underlying Actions**

The Underlying Actions are as follows:

1. <u>Specht v. Netscape Communications Corp. and America Online, Inc.</u>, No. 00 Civ. 4871, filed August 3, 2000, in the Southern District of New York.

2. <u>Weindorf v. Netscape Communications Corp and America Online, Inc.</u>, No. 00 Civ. 6219, filed August 18, 2000, in the Southern District of New York.

3. <u>Gruber v. Netscape Communications Corp. and America Online, Inc.</u>, No. 00 Civ. 6249, filed August 18, 2000, in the Southern District of New York.

4. <u>Mueller v. Netscape Communications Corp. and America Online, Inc.</u>, No. 00 Civ. 1723, filed July 21, 2000, in the District of Columbia.

The above actions contain virtually identical allegations that do not differ materially as to the issue of coverage.  (Plaintiffs' Motion at 5; Notice of Motion and Motion by Defendant St. Paul Mercury Insurance Co. for Partial Summary Judgment Re Duty to Defend at 4, hereafter, "St. Paul's Motion," Docket Item No. 74.)  Each action concerns Netscape's SmartDownload product, a software program designed to facilitate the ability of third party users to download large files over the Internet by enabling them to resume interrupted downloads from the point of interruption. (Declaration of David Park in Support of Plaintiffs' Cross-Motion for Partial Summary Judgment ¶ 4, hereafter, "Park Decl.," Docket Item No. 85; Declaration of Marc Patterson in Support of Plaintiffs' Cross-Motion for Partial Summary Judgment ¶ 3(a), hereafter, "Patterson Decl.," Docket Item No. 85.)

The version of the program at issue contained a feature, "Smart Download Profiling," which provided Netscape with information about users' internet activities.  Netscape used this information

to create profiles of its users, both to help with technical support, and additionally, to create opportunities for targeted advertising. (Park Decl. ¶¶ 5-6.) The claimants in the Underlying Actions alleged that Netscape's use of the feature violated the Electronic Communications Privacy Act ("ECPA") and the Computer Fraud and Abuse Act ("CFAA").

### B.  Insurance Policy

In 1999, AOL formed a team to plan a strategy on how to efficiently cover its liability exposure.[1] (St. Paul's Motion, Ex. A, Spencer Deposition at 23:23-24:25, hereafter, "Spencer Dep.".) The team was formed, at least in part, to address cost control issues regarding the unique risks associated with AOL's online and internet businesses. (Joint Ex. 36, Docket Item Nos. 109-11; Spencer Dep. at 22:10-23:22). When AOL eventually picked insurance, it chose, in addition to other policies, General Liability Protection (the "Policy") from St. Paul. (Joint Exs. 1, 79.) The Policy was effective April 1, 1999, through June 1, 2001, and was the less expensive option that St. Paul offered. (Joint Exs. 1, 79.) It included a duty to defend with respect to each of its coverages. (Joint Ex. 1 at SPM0142). Consistent with the lower price, the original quote for the policy excluded coverage for advertising injury or personal injury, such as invasion of privacy claims. (Joint Ex. 79.) The parties later amended the exclusion with an endorsement that limited the advertising injury and personal injury exclusion to those injuries arising from "online activities." (Joint Ex. 69.) The negotiations that led to the issuance of the Policy took place in New York and Washington, DC. (Joint Exs. 79, 81, 84, 85, 66, 100-101, 104, 225.) Netscape was automatically added to the Policy as a subsidiary of AOL when it was acquired in 1999 and later was named as an insured. (Joint Exs. 85, 86).

The Policy provides a number of distinct coverages and exclusions, only several of which are at issue. The Policy's personal injury coverage provides:

---

[1] The parties jointly stipulated that the testimony of Nancy Perkins and Glenn Spencer shall be considered the testimony of AOL. (Stipulation and Agreement for Purpose of Summary Judgment Motion ¶ 12, Docket Item No. 80.)

**Personal injury liability**. We'll pay amounts any protected person is legally required to pay as damages for covered personal injury that:

- results from your business activities, other than advertising, broadcasting, publishing or telecasting done by or for you; and
- is caused by a personal injury offense committed while this agreement is in effect.

. . .

Personal injury means injury, other than bodily injury or advertising injury, that's caused by a personal injury offense.

Personal injury offense means any of the following offenses:

. . .

Making known to any person or organization written or spoken material that violates a person's right to privacy.

(Joint Ex. 1 at SPM0141.)

The Policy excludes personal injury coverage for criminal acts, which are defined as follows:

**Deliberately breaking the law.** We won't cover personal injury that results from:

- the protected person knowingly breaking any criminal law; or
- any person or organization breaking any criminal law with the consent or knowledge of the protected person.

(Joint Ex. 1 at SPM0154.)

The Policy also specifically excludes personal injury coverage for "online activities." The exclusion clause provides:

For the purposes of advertising injury and personal injury, all Online Activities are excluded from these coverages.

"Online Activities" is defined as providing e-mail services, instant messaging services, 3rd party advertising, supplying 3rd party content and providing internet access to 3rd parties. However, it is understood that America Online's own advertising is not considered "Online Activity" regardless of the medium or format in which it is presented.

(Joint Ex. 1 at SPM0341.)

4

**C.    Procedural History**

Shortly after service of the complaints in the Underlying Actions, Plaintiffs tendered them to St. Paul. (Joint Exs. 129, 130.) Based on its assessment of the complaints and the Policy, St. Paul denied coverage, finding it had no duty to defend. (Joint Ex. 131.) Plaintiffs proceeded to defend themselves in the Underlying Actions, incurring substantial expenses, and eventually settled. (Plaintiffs' Motion at 7.) On December 12, 2005, Plaintiffs filed this action in state court, alleging breach of contract, breach of the covenant of good faith and fair dealing, and violations of California Business and Professions Code Section 17200. (Notice of Removal, Docket Item No. 1.) Defendants removed on January 11, 2006. Id. On January 24, 2006, Plaintiffs filed their First Amended Complaint. (See Docket Item No. 22.) All Defendants except for St. Paul have settled. (Joint Case Management Statement at 1, Docket Item No. 37.) Plaintiffs allege three causes of action against St. Paul as follows: (1) Second Cause of Action for Breach of Contract; (2) Fifth Cause of Action for Breach of the Covenant of Good Faith and Fair Dealing; and (3) Unfair Competition in Violation of California Business and Professions Code Section 17200. (Second Amended Complaint, Docket Item No. 22.)

Presently before the Court are Plaintiffs' and St. Paul's cross-motions for partial summary judgment regarding the duty to defend.

### III. STANDARDS

Although motions for partial summary judgment are common, Rule 56 of the Federal Rules of Civil Procedure, which governs summary judgment, does not contain an explicit procedure entitled "partial summary judgment." As with a motion under Rule 56(c), partial summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of partial summary judgment "is to isolate and dispose of factually unsupported claims or defenses." Celotex v. Catrett, 477 U.S. 317, 323-24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying the evidence

5

which it believes demonstrates the absence of a genuine issue of material fact." Id. at 323. The non-moving party must then identify specific facts "that might affect the outcome of the suit under the governing law," thus establishing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e).

When evaluating a motion for partial or full summary judgment, the court views the evidence through the prism of the evidentiary standard of proof that would pertain at trial. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986). The court draws all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight that particular evidence is accorded. See, e.g. Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1992). The court determines whether the non-moving party's "specific facts," coupled with disputed background or contextual facts, are such that a reasonable jury might return a verdict for the non-moving party. T.W. Elec. Serv., 809 F.2d at 631. In such a case, partial summary judgment is inappropriate. Anderson, 477 U.S. at 248. However, where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

The filing of cross-motions for partial summary judgment or summary judgment does not necessarily mean that the material facts are, indeed, undisputed. The denial of one motion does not necessarily require the grant of another. See Atlantic Richfiled Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1147 (10th Cir. 2000). The motions must be evaluated in accordance with the claim or defense that is the subject of the motion and in accordance with the burden of proof allocated to each party. Whether an insurer has a duty to defend is a proper subject for summary judgment. Frank and Freedus v. Allstate Insurance Company, 45 Cal. App. 4th (1996).

## IV.  DISCUSSION

### A.   Choice of Law

As a threshold matter, the parties dispute whether California or Virginia law applies for purposes of interpreting the Policy. (St. Paul's Motion at 11-14; Plaintiffs' Motion at 8-12.)

In diversity cases, courts apply the choice of law rules of the forum state, in this case California. Klaxon Co. v. Stentor Elec. Manufacturing Co., 313 U.S. 487, 496 (1941). When

6

neither party identifies a meaningful conflict between California law and that of and another state, California courts apply California law. <u>Homedics, Inc. v. Valley Forge Ins. Co.</u>, 315 F.3d 1135, 1138 (9th Cir. 2003). Only when a conflict exists do California courts inquire into the "governmental interest" of each respective state. <u>Strassberg v. New England Mut. Life Ins. Co.</u>, 575 F.2d 1262, 1263-64 (9th Cir. 1978). Even where there is a conflict, if the application of a foreign law does not significantly advance the interests of the foreign state, California courts apply California law. <u>Id.</u> In this case, for conflicts of laws purposes, St. Paul bears the burden of establishing a meaningful conflict between the laws of California and Virginia. <u>Homedics</u>, 315 F.3d at 1138.

With respect to contract interpretation, St. Paul contends that Virginia law should apply to the extent there is a conflict with California law on the issues presented before the Court. (St. Paul's at 11.) However, St. Paul then admits that California and Virginia law are consistent with regard to the rules governing contract interpretation, a key issue in this case. (St. Paul's Motion at 13.) Since St. Paul concedes that there is no conflict between the two states on this issue, the Court applies California law for contract interpretation purposes. <u>Homedics</u>, 315 F.3d at 1138.

With respect to the duty to defend, St. Paul contends that California law and Virginia law differ. (St. Paul's Motion at 13.) However, St. Paul then admits that the difference will not affect the outcome of this case. (St. Paul's Motion at 13.)

In California, analysis of whether a duty to defend exists starts "by comparing the allegation of the complaint with the terms of the policy." <u>Waller v. Truck Ins. Exchange, Inc.</u>, 11 Cal.4th 1, 18 (1995). Similarly, in Virginia, the obligation to defend "depends on comparison of the policy language with the underlying compliant." <u>Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.</u>, 407 F.3d 631, 636 (4th Cir. 2005). A second tier of analysis in California requires an insurer to take into consideration facts known or readily available to it. <u>Waller</u>, 11 Cal. 4th at 18. While this may differ from Virginia law, the Court does not consider any such facts in a way that materially prejudices St. Paul. This means applying Virginia law would not significantly advance an interest of

7

Virginia. Strassberg, 575 F.2d at 1264. The Court finds that St. Paul has failed to establish that a different outcome would be reached if Virginia law were applied.

Accordingly, the Court applies California law as to the issue of whether St. Paul had a duty to defend Plaintiffs.

**B.     Duty to Defend**

Plaintiffs contend that St. Paul had a duty to defend them in the Underlying Actions. (Plaintiffs Motion at 12.) St. Paul contends that the Underlying Actions did not allege a covered offense. (St. Paul's Motion at 15.)

Under California law, a liability insurer has a broad duty to defend. Montrose Chem. Corp. v. Sup. Ct., 6 Cal. 4th 287, 295 (1993). In analyzing whether a claim is covered by an insurance policy, the court first examines the coverage provisions to determine whether the claim falls within the policy terms. Waller, 11 Cal. 4th at 16. Second, the court examines the exclusion clauses because they remove coverage for risks that would otherwise fall within the insuring clauses. Id. Whether a duty arose depends on the language of the insurance policy, and interpretation of an insurance policy is a question of law. Id. at 18.

In interpreting an insurance policy, the court looks at the plain meaning of the language in dispute. Id. The court views the plain meaning according to the mutual intent of the parties, as evidenced from the writing itself. Id. Only when terms are ambiguous, does the court look to extrinsic evidence, while straining not to find ambiguity where none exists. Id. at 19. In this case, the Policy contains an express duty to defend. (Joint Ex. 1 at SPM0141.) Therefore, the Court proceeds to consider whether there was a qualifying occurrence.

**1.     Making Known to Any Person or Organization**

Plaintiffs contend that the personal injury offense of "making known to any person or organization written or spoken material that violates a person's right to privacy" was implicated by the Underlying Actions, giving rise to the duty to defend. (Plaintiffs' Motion at 12-22.) St. Paul contends that the complaints in the Underlying Actions did not allege Plaintiffs were "making known" information to "any person or organization" because only Netscape and AOL learned of the

8

information, and they are related entities. (St. Paul's Motion at 15-19.) It is undisputed the complaints allege that SmartDownload gathered information from users, that this information was transmitted to Netscape and AOL, and that persons at Netscape and AOL knew of this information. (Specht Complaint ¶¶ 22-38.) Thus, the Court must interpret the phrases "making known" and "any person or organization."

The Court looks first to the plain meaning of the terms at issue to determine the mutual intent of the parties. Waller, 11 Cal. 4th at 18. "Making known" literally means the act of making others aware.[2] For sake of this analysis, the others are "any person or organization," which includes individual employees of Netscape and AOL, as well as the entities themselves. By using the word "any," the Policy does not place restrictions on coverage based on the relatedness of the persons or entities. Therefore, when Netscape received information from SmartDownload, it was making it known to AOL by transmitting it to its parent company. (Specht Complaint ¶¶ 22-38.) Similarly, individual Netscape employees made the information known to each other by circulating files among themselves with the information gained from SmartDownload. Id. The evidence does not materially contradict this reading of events in light of the Court's interpretation of the Policy, so the Court does not need to reach whether Netscape circulated information gained from SmartDownload to another non-affiliated person or organization.

Accordingly, in the absence of an exclusion, the Underlying Actions would have qualified as an occurrence giving rise to St. Paul's duty to defend. Thus, the Court proceeds to examine the exclusions at issue to determine their applicability.

### 2. Criminal Activity Exclusion

St. Paul contends that it did not have a duty to defend because the Underlying Actions alleged criminal activity, which was excluded from coverage under the "deliberately breaking the law" clause. (St. Paul's Motion at 19-20.)

---

[2] St. Paul submitted additional authority on this issue. (See, e.g., Motion for Leave to File Additional Authority, Docket Item No. 148.) However, the Court finds the authority submitted by St. Paul distinguishable as it relates to intrusion upon seclusion privacy claims, which are unlike the disclosure of private facts claims at issue here.

9

The duty to defend arises upon the insured's tender of defense and continues until the underlying lawsuit is concluded or until it has become clear that there is no potential for coverage. Montrose, 6 Cal. 4th at 295.

In this case, Plaintiffs' were not found to have committed a "breaking" of a criminal law as required by the "deliberately breaking the law" exclusion. (Joint Ex. 1 at SPM0154.) Therefore, the exclusion was never triggered. Id. The mere allegation that Plaintiffs' broke a criminal law in the Underlying Actions is not enough to support the assertion that Plaintiffs knowingly broke or consented to the breaking of a criminal law. This is especially true because the Underlying Actions were civil in nature and settled without a court finding on liability, or for that matter, guilt.

Accordingly, the Court finds the "deliberately breaking the law" exclusion inapplicable.

### 3. Online Activity Exclusion

St. Paul contends that the Policy excludes coverage for "online activities" and that the allegations regarding Netscape's SmartDownload in the Underlying Actions referred to such activities. (St. Paul's Motion at 20-23.) Plaintiffs contend that the exclusion does not apply because SmartDownload did not involve "providing access to 3rd parties." (Plaintiffs' Motion at 27-29.)

The Court finds that the plain meaning of the term "online activities" includes those products and services that provide, allow for, and facilitate access to the Internet and its content. The definition of online activities in the endorsement that amended the Policy confirms this interpretation. It includes, "[p]roviding e-mail services, instant messaging services, 3rd party advertising, supplying 3rd party content and providing internet access to 3rd parties."[3] (Joint Ex. 1 at SPM0341.)

In determining the mutual intent of the parties from the writing itself, the Court focuses its analysis on the definition phrase, "providing internet access to 3rd parties." The Court does not read this phrase to be limited to merely providing a connection to the Internet because the definition of "internet access" is broader than "internet connection." "Access" includes not only the permission

---

[3] The Court does not consider whether the parties mutually understood this list to be exhaustive.

10

or ability to enter as "connection" does, but also the freedom or ability to make use of something. WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 49 (1991). Plaintiffs do not dispute that SmartDownload facilitated the ability of third party users to download large files over the Internet. (Patterson Decl. ¶ 3(a).) Read in terms of the definition of access above, SmartDownload allowed third parties "to make use of" the Internet by allowing users to download large files successfully. Thus, by providing software that facilitated the ability of users to make use of the Internet, Plaintiffs provided internet access to those third party users.

Even assuming, *arguendo*, that the terms "online activities" or "providing internet access" are ambiguous, they are interpreted as the insurer believed the insured understood them at the time of formation. Allstate, 45 Cal. App. 4th at 471; see also Montrose Chemical Corp. v. Admiral Ins. Co., 10 Cal. 4th 645, 667 (1995). If the ambiguities persist, they are construed against the party who caused them to exist. Allstate, 45 Cal. App. 4th at 471. This helps to preserve the reasonable expectations of the parties. Id. Only if the language is still ambiguous after taking these steps, is it resolved against the insurer. Id.

Exhibits and deposition testimony suggest both parties attached broad meaning to the online activities exclusion at the time it was drafted, although the parties now dispute the meaning of the clause. (Joint Exs. 21, 22, 23, 26, 36, 37; Spencer Dep. 107:17-108:16.) Nonetheless, it was AOL who drafted the clause, so the Court interprets any ambiguity against Plaintiffs.[4] Admiral, 10 Cal. 4th at 667. Accordingly, the Court finds the scope of the online activity exclusion sufficiently broad to encompass Plaintiffs' activities with regard to Netscape's SmartDownload product as alleged in the Underlying Actions. Since the exclusion applies, St. Paul did not have a duty to defend Plaintiffs' in the Underlying Actions.

---

[4] The Court does not consider whether AOL drafted the clause in response to litigation even though the first Underlying Action was filed on August 3, 2000, and the endorsement was submitted on September 13, 2000. (Specht Complaint; Joint Ex. 69.)

11

### 4. Plaintiffs' Other Claims

The Court raises, *sua sponte*, the issue of whether, in light of the Court's finding on the duty to defend, Plaintiffs can maintain a claim for breach of the covenant of good faith and fair dealing, and a claim under Section 17200. When a policy does not provide coverage on its terms, there can be no action for breach of the covenant of good faith and fair dealing as to the policy contract. Waller, 11 Cal. 4th at 35-36. Here, the Policy does not provide coverage due to the online activity exclusion.

Accordingly, the Court, *sua sponte*, DISMISSES Plaintiffs' claim for breach of the covenant of good faith and fair dealing.

## V. CONCLUSION

The Court DENIES Plaintiffs' motion for partial summary judgment and GRANTS St. Paul's motion for partial summary judgment regarding the duty to defend.

In light of this Order, the Court invites the parties to a Further Case Management Conference on **October 29, 2007 at 10 a.m.** Pursuant to Civil Local Rule 16-9, the parties are to file a Joint Status Statement by October 19, 2007. The statement shall advise the Court on the impact of this Order and claims remaining in the action.

Dated: October 10, 2007

JAMES WARE
United States District Judge

1 **THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2 Daniel J. Bergeson dbergeson@be-law.com
David Christopher Kerby ckerby@gordonrees.com
3 Hway-Ling Hsu hhsu@be-law.com
Leslie Ann Pereira lpereira@abelsonherron.com
4 Marc George VanNiekerk mvanniekerk@be-law.com
Michael Bruce Abelson mabelson@abelsonherron.com
5 Sara Mary Thorpe sthorpe@gordonrees.com

**Dated: October 10, 2007**        **Richard W. Wieking, Clerk**

**By:  /s/ JW Chambers**
     **Elizabeth Garcia**
     **Courtroom Deputy**

**United States District Court**
For the Northern District of California